831 F.2d 290
 56 USLW 2308
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Randolph KING and Constance McGee, for themselves and as
parents and next friends of JaWan McGee, Infant, Appellants,
v.
Detective Stephen McCOWN and Donald Pomerleau, Police
Commissioner, and Mayor & City Council of
Baltimore, a Municipal Corporation, Appellees.
 No. 84-1490.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 4, 1985.
Decided: Oct. 1, 1987.
 
 John Amato, IV (John T. Enoch, Goodman, Meagher & Enoch on brief) for appellants.
 Millard S. Rubenstein, Assistant Solicitor (Benjamin L. Brown, City Solicitor, J. Shawn Alcarese, Assistant Solicitor on brief) for appellees.
 D.Md.
 VACATED.
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey, II, Chief Judge. (C/A 80-800)
 Before HARRISON L. WINTER, Chief Judge, WILKINSON, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The primary issue in this appeal of an action for damages from a municipality for police misconduct is whether the defendants were entitled to withhold the factual background of prior incidents involving the discharge of guns by police in apprehending suspects. Because this information was germane to the plaintiffs' cause of action, we vacate the summary judgment in favor of the municipality and its officials and remand the case for further proceedings.[1]
 
 
 2
 * The action arises from the unjustified shooting of 17-year old JaWan McGee by Baltimore police detective Stephen McCown. The shooting permanently paralyzed McGee's legs. The Police Trial Board concluded that McCown "fired his service revolver three times when there existed insufficient facts and circumstances to warrant reasonable belief of imminent danger to himself." The Board recommended that McCown be dismissed from the police department. Police commissioner Donald D. Pomerleau accepted the Board's recommendation and dismissed McCown. The Baltimore City Court upheld the dismissal.
 
 
 3
 Claiming that the incident resulted from the police department's deficient training and oversight of its officers, Ralph King and Constance McGee brought suit against officer McCown, Commissioner Pomerleau, and the Mayor and City Council seeking damages under 42 U.S.C. Sec. 1983 and the Maryland common law for themselves and as next friends of JaWan McGee.[2] In pretrial discovery McGee sought police department files and reports on the use of excessive force or of a weapon in deadly force for ten years preceding the incident. The commissioner objected on the ground that the burden of producing the requested information far outweighed its relevance and probative value. The district court sustained the commissioner's objection. Later, a police captain testified on deposition that between 1976 and mid-1982 there had been 121 shootings by Baltimore police. On the assumption that the files pertaining to these incidents were in his office, he estimated he could locate them in about a week. In light of this evidence, McGee asked the court to reconsider its decision not to compel Pomerleau to make discovery. The court denied the motion.
 
 
 4
 McCown consented to the entry of judgment against him but has paid nothing toward its satisfaction. The district court granted summary judgment for Pomerleau and the city on the remaining federal claims and declined to exercise pendent jurisdiction over McGee's common law claims. This appeal, which challenges both the entry of summary judgment and the pretrial restriction of discovery, followed.
 
 II
 
 5
 The Federal Rules of Civil Procedure extend the scope of discovery, with minor exceptions not applicable here, to information "reasonably calculated to lead to the discovery of admissible evidence" which the responding party can provide without undue labor or expense. Fed.R.Civ.P. 26(b)(1), 33(b), 34(a); see Ralston Purina Co. v. McFarland, 550 F.2d 967, 973 (4th Cir.1977); see generally 8 Wright & Miller, Federal Practice and Procedure, Secs. 2007, 2173-74 (1970). We have interpreted the quoted language liberally as a requirement merely that information sought be germane to the subject matter of the action. See Ralston Purina, 550 F.2d at 973; see generally 8 Wright & Miller, Sec. 2008, p. 48 (1970). Control over pretrial discovery is within the discretion of the trial court whose rulings will not be disturbed absent an abuse of discretion which may result in "fundamental unfairness in the trial of the case." Voegeli v. Lewis, 568 F.2d 89, 96 (8th Cir.1977); see Belcher v. Bassett Furniture Industries, Inc., 588 F.2d 904, 907 (4th Cir.1978). But our decisions disclose that the district court's discretion is not unbounded. It must be reviewed in light of the substantive elements of the claim. The need for discovery can be demonstrated by showing its relevancy to the cause of action. See Belcher, 588 F.2d at 908.
 
 
 6
 The district court initially sustained the commissioner's objection to discovery in 1982 and denied reconsideration in 1984. Thus, the district court did not have the benefit of significant recent decisions pertaining to municipal liability for injuries caused by the police. In Oklahoma City v. Tuttle, 471 U.S. 808 (1985), the Court held that a single incident of police misconduct is insufficient to support an inference that a city policy of inadequate training caused harm to the claimant. Our opinion, Spell v. McDaniel, --- F.2d --- (4th Cir.1987), identifies and analyzes two theories for imposing municipal liability. The first is based on deficient programs of police training and supervision. The second pertains to an irresponsible failure by policy makers to correct a widespread pattern of unconstitutional police conduct of which the instant complaint is alleged to be an example. --- F.2d at ---.
 
 
 7
 It is not the function of this opinion to restate the elements of the theories necessary to prove municipal liability for police conduct which is alleged to violate federally protected rights. That information and the rationale of the theories are explained in Tuttle and Spell. It is sufficient to point out that those cases establish that facts about prior police conduct are essential for determining municipal liability. Proof of a single incident of misconduct is insufficient. Even proof that Baltimore police used their guns 121 times in 5 years could not establish McGee's claim. To attempt to satisfy the stringent requirements of Tuttle and Spell for the imposition of municipal liability, McGee needed to learn the factual background of shooting incidents involving the police.
 
 
 8
 Federal Rule of Civil Procedure 26(b)(1)(iii) directs that determination of the scope of discovery must take into account "the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." Applying these criteria in the context of the substantive law explained in Tuttle and Spell, we conclude that McGee is entitled to some of the information he seeks. With respect to the first criterion, "needs of the case," it is indispensable for McGee to show similar incidents of misconduct in order to pursue either theory of recovery identified in Spell. The amount in controversy is substantial because the officer's shot paralyzed McGee. The city's resources will not be unduly depleted by complying with the requested discovery. Finally, the issues at stake in the litigation are important. They involve the question of municipal liability arising out of an alleged unconstitutional act by a police officer against an innocent citizen.
 
 
 9
 McGee, however, is not entitled to reports of excessive force that do not involve the use of a gun. The gist of his complaint is deficient firearm training and failure of superior officers to correct improper use of guns. Limiting discovery to reports of shootings should not unduly hamper McGee or impose an intolerable burden on the city. McCown had been a police officer for nine years. Limiting discovery to the period of his employment is appropriate.
 
 
 10
 As described in his brief, McGee also sought:
 
 
 11
 Information and documents concerning the proposed establishment of a Civilian Review Board or other independent reviewing body, and information and documents relating to proposed changes in the make-up and/or investigative powers of the Complaint Evaluations Board; and
 
 
 12
 Requests by certain public organizations and governmental agencies (FBI, NAACP, etc.) for investigations into the Police Department's use of excessive force or use of a weapon in deadly force or, alternatively, requests by those organizations for access to Department and other City records concerning the same, and defendant's responses thereto.
 
 
 13
 This information had at the most only marginal utility, and search of the department files to uncover it was shown to be unduly burdensome. The district court did not abuse its discretion in sustaining objections to these requests.
 
 
 14
 The judgment of the district court granting summary judgment to the commissioner and the city is vacated. Consequently, its dismissal of the claims based on state law is vacated. The case is remanded for further proceedings consistent with this opinion and with the principles stated in Spell v. McDaniel, --- F.2d --- (4th Cir.1987). McGee shall recover his costs.
 
 WILKINSON, Circuit Judge, dissenting:
 
 15
 I understand the concerns that underlie this case. A young man was paralyzed when he was unjustifiably shot by a police officer. Because however, there is no indication that this tragic incident was the result of an unconstitutional municipal custom or policy, the district court acted well within its discretion in cutting off discovery when it did.
 
 
 16
 The plaintiff's burden in this case was a difficult one. Local governments are not liable for the wrongs of municipal employees solely on the basis of respondeat superior. To prevail in a Sec. 1983 action against municipal officials, plaintiff must show that his injuries were inflicted as the result of "the execution of [the] government's policy or custom." Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). The Supreme Court in Oklahoma City v. Tuttle, 471 U.S. 808 (1985) and this court in Spell v. McDaniel, --- F.2d --- (4th Cir.1987), have articulated the types of activities and conduct on the part of a municipality that are required to establish the existence of such a custom or policy. Clearly, a single instance of misconduct by an individual police officer is not sufficient. Tuttle, 471 U.S. at 823-24.
 
 
 17
 Both Tuttle and Spell establish a stringent standard for recovery. It is ironic indeed that cases setting strict conditions on municipal liability are now invoked by the majority to justify repetitive rounds of discovery. If this discovery demonstrated any fruitful prospect, that would be one thing. It did not, however, and the court was justified in bringing it to an end.
 
 
 18
 The majority has granted the plantiffs access to reports of shootings by Baltimore police officers during the nine year period that McCown was a police officer prior to the shooting of McGee in March of 1980. Although the majority precluded discovery pertaining to complaints of excessive force not involving firearms, the discovery permitted by the majority remains extremely broad. No distinction is drawn between justified and wrongful shootings. Plaintiffs have been granted access to every shooting in self defense, every warning shot, every shooting incident no matter how innocent, by a Baltimore police officer since 1971.
 
 
 19
 There is no justification for placing on the Baltimore Police Department the not insubstantial burden of locating, compiling, and assembling the records of nine years of shootings, some of which are now nearly seventeen years old, from among the various police department files.
 
 
 20
 The plaintiffs have provided no inkling of any misconduct in connection with shootings by Baltimore police officers, let alone any indication of a policy of unconstitutional behavior by police department or municipal officials. The district court found that the training and supervision of police officers was entirely adequate. Nor does the statistical evidence present any indication of an unconstitutional policy. From 1976 through 1980 there were ninety-four shootings by Baltimore police officers.* As the district court noted, however,
 
 
 21
 [T]hese statistics prove very little insofar as the issues in this case are concerned. There are over 800,000 citizens in Baltimore and some 3,000 police officers. [Nineteen] shootings a year is hardly surprising and certainly does not prove knowledge on the part of [the police commissioner] of misconduct by police officers even if the unwarranted assumption were made that these particular shootings, or a majority of them, involved actual misconduct.
 
 
 22
 Plaintiffs received extensive discovery in this case. In addition to records and documents on McCown's personnel history and McCown's 1980 shooting of McGee, they also received statistical information pertaining to shootings by Baltimore police officers for the five years prior to the shooting that gave rise to this case. Plaintiffs were also provided information on training programs for police officers both at the Baltimore Police Academy and after graduation, disciplinary measures for officers who fire their weapons in violation of departmental regulations, and investigatory procedures followed when officers fire their weapons for any reason whatsoever. This discovery revealed no evidence of an unconstitutional municipal or police department policy. Indeed the majority does not suggest otherwise. There was absolutely no indication that further discovery would reveal evidence of such a policy. Where these initial discovery efforts were unavailing, the district court properly refused to permit additional discovery.
 
 
 23
 The Federal Rules of Civil Procedure do not require the majority's result. While the Rules permit broad discovery of any information "reasonably calculated to lead to the discovery of admissible evidence," they also require the trial court to limit the frequency or extent of discovery if "the discovery sought is unreasonably cumulative or duplicative," if "the party seeking discovery has had ample opportunity by discovery ... to obtain the information sought," or if "the discovery is unduly burdensome or expensive." Fed.R.Civ.P. 26(b)(1). These criteria have been fully met in this case.
 
 
 24
 The decision as to the permissible extent of discovery in a particular case has properly been vested in the sound discretion of the trial court. "Granting or denying a [discovery] request ... is a matter within the trial court's discretion, and will be reversed only if the action was improvident and affected substantial rights." Belcher v. Bassett Furniture Industries, Inc., 588 F.2d 904, 907 (4th Cir.1978).
 
 
 25
 There was no abuse of discretion here. The district court acted prudently in controlling the discovery process. I do not minimize the tragic incident at issue, which partially paralyzed a teen-age resident of Baltimore. The record fully demonstrates, however, that the incident reflects the unjustified response of an individual officer, not an unconstitutional policy or custom on the part of responsible officials. Every single-incident Sec. 1983 action does not automatically require a marathon examination of police procedures, especially where ample discovery has already been taken, but bore no fruit.
 
 
 
 [1]
 After oral argument, we held the case pending decision of Springfield v. Kibbe. The Court, however, dismissed the writ as improvidently granted. Springfield v. Kibbe, 107 S.Ct. 1114 (1987)
 
 
 [2]
 For convenience, plaintiffs are hereafter referred to as McGee
 
 
 *
 The district court apparently misread the report of one hundred twenty-one shootings from 1976 to May 1982 as encompassing the five year period before 1980